IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY GUSTAITIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ELAINE CHAO, Secretary of Labor | : | NO.  05-1210 |

# MEMORANDUM AND ORDER

**L. Felipe Restrepo**                                                                      **July 16, 2007**
**United States Magistrate Judge**

      Plaintiff, Anthony Gustaitis, a former employee of the federal government,

initiated this employment discrimination action against defendant, Elaine Chao in her capacity as

Secretary of Labor, alleging gender and age discrimination under Title VII of the Civil Rights

Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. §§ 2000e, et

seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.,

respectively.  Specifically, plaintiff alleges that his federal employer engaged in employment

discrimination in failing to select him for a promotion allegedly on the basis of his gender and

age.

      Testimony was heard during a bench trial before this Court from January 22

through January 25, 2007, and counsel presented closing arguments on February 2, 2007.

Counsel for each party subsequently filed their respective Proposed Findings of Fact and

Conclusions of Law (herein referred to as the parties' briefs).  For the reasons set forth below,

judgment is awarded in favor of defendant and against plaintiff.

## 1.    Findings of Fact

After graduating from Penn State University, plaintiff worked for the Internal Revenue Service (the "IRS") as a tax auditor and a pension specialist for about 14 years, until 1978.[1]  During his employment at the IRS, plaintiff applied for a promotion to a supervisory position.  He was not selected for the IRS promotion, and he filed an Equal Employment Opportunity ("EEO") discrimination claim alleging that his non-selection was the result of his religion and national origin.  However, his discrimination claim against the IRS was dismissed.

Plaintiff left the IRS, and in September of 1978 he started working for the Philadelphia Regional Office of the Pension and Welfare Benefits Administration ("PWBA"), an agency of the United States Department of Labor ("DOL") which enforces the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") and related legislation.[2]  The Philadelphia Regional Office of the PWBA consisted of two physical locations.  One office was located in Philadelphia, Pennsylvania and the other was located in Washington, D.C.  The Philadelphia Regional Office served an area consisting of: Pennsylvania; Maryland; Washington, D.C.; Delaware; West Virginia; Virginia; and southern New Jersey.

The Philadelphia Regional Office has been managed under the oversight of Regional Director, Mabel Capolongo, since late 1997.  Ms. Capolongo was born December 24, 1955, and she started working at the PWBA in 1979.  She has an undergraduate degree in

---

[1]He graduated from Temple University School of Law in 1973.

[2]In Feb. 2003, about one year before plaintiff's retirement, the name of the PWBA was changed to the Employee Benefits Security Administration ("EBSA").  Because the events in this action took place prior to the name change, the agency is referred to herein as the PWBA.

accounting, a masters degree in business administration from American University and received certification as a Certified Public Accountant ("CPA") in 1989.

The PWBA Regional Director preceding Ms. Capolongo was Virginia Smith. Immediately prior to Ms. Smith, the Regional Director overseeing the Philadelphia Regional Office was a male, Gerard Gumpertz, who was holding that position when plaintiff was hired in 1978.

During the years relevant to plaintiff's present claims, there were two "tracks" of investigators and auditors in the PWBA Philadelphia Office. Each track was overseen by a supervisor and consisted of both auditors and case investigators. Ms. Capolongo had known plaintiff since the early 1980s.

When plaintiff left the IRS and started working for the Philadelphia Regional Office of the PWBA in 1978, he began as a grade level "GS-12" auditor, a position he held for the next 26 years until his retirement on January 24, 2004. As a PWBA GS-12 auditor, plaintiff investigated cases by reviewing financial and accounting records. He testified that he closed approximately 500 cases during his 26-year career at the PWBA and, of that amount, he would consider several dozen to have been complex cases, but only four of which he identified at trial.

Except for his first year or two at the PWBA, plaintiff's track supervisor was Jay Igusky, who provided plaintiff's annual work performance evaluations. The PWBA employees received one "overall" annual performance rating, based on their ratings on several "critical factors." To receive the highest overall annual performance rating, an employee had to receive the highest rating available on each of three (or sometimes four) critical elements.

3

During the five-year period preceding the promotion at issue, plaintiff's overall rating on his performance evaluations was either "highly effective" or "effective."  See DOL Exhibits 2, 3, 4, 5 and 16c.  Throughout his 26-year PWBA career he never received the highest overall annual performance rating (i.e., a rating of either "outstanding" or "superior").

During the five-year period preceding the promotion at issue – April 1995 through March 2000 – plaintiff came close on one occasion to receiving the highest overall annual performance rating; that occasion was the rating year of April 1997 through March 1998, see DOL Exhibit 4, wherein he received a rating of "exceeds" on two critical elements and a rating of "meets" on one critical element.  Had he received an "exceeds" rating on all three critical elements, he would have received the highest overall annual performance rating of "superior."

Prior to the 2000 promotion at issue, plaintiff had applied for two other promotions at the PWBA.  In 1979 or 1980, plaintiff applied for the position of supervisory investigator.  However Mr. Igusky, a male approximately the same age as plaintiff, was promoted instead, and Mr. Igusky became plaintiff's track supervisor.  The selecting official for that promotion was a male, Gerard Gumpertz, then-Regional Director of the Philadelphia Regional Office.  Plaintiff testified at trial that he was satisfied that Mr. Gumpertz's selection was based on seniority.

Another promotion plaintiff applied for was in late 1999 or early 2000, approximately a year before the promotion at issue.  At that time, plaintiff applied for a level GS-13 senior investigator position.  There were 5 or 6 applicants for two GS-13 senior investigator positions to be filled.  Mabel Capolongo was the selecting official for that position.  Plaintiff

ultimately withdrew his application before the selection decision, after an angry verbal altercation with another applicant, Daphne Rich, over an unrelated matter.

In withdrawing his application, plaintiff told Ms. Capolongo he was nearly ready to retire anyway.  At the close of the selection process, Ms. Capolongo selected a male over age 40, David Finizie, for one of the GS-13 senior investigator vacancies.  She also selected a female under age 40, Daphne Rich, for the other vacancy.  Ms. Rich testified at trial that she was pleased with the application process and with her pre-selection interview with Ms. Capolongo, which Ms. Rich found to be complete and fair.  Plaintiff cannot recall ever having applied for any other promotion at the PWBA except the promotion at issue in this action.

In September 2000**,** approximately three years prior to plaintiff's January 2004 retirement**,** the PWBA issued a Vacancy Announcement for a position of Supervisory Benefits Advisor ("SBA"), a GS-13 grade level.  Ms. Capolongo was the selecting official, and the selection criteria were determined by the national office as was the position description.  See DOL Exhibit 6 (nationwide DOL "Vacancy Announcement") and Exhibit 7 (position description for "Supervisory Benefits Advisor")).

The national office required that all applicants submit their most recent performance evaluations, see DOL Exhibit 6 at 3, and the national office set forth in the Vacancy Announcement the selection criteria under the title "Evaluation Factors: Factors designated (H) are rated high."  Id. at 2.  The six evaluation factors rated "high" were as follows: (1) ability to deal effectively with members of the general public; (2) demonstrated skill in planning and organizing work; (3) ability to provide guidance and technical supervision; (4) demonstrated skill in communicating effectively; (5) skill in preparing written factual reports; and (6) demonstrated

skill in conducting research.  The benefits advisors to be supervised responded to a wide variety

of inquiries and resolved many issues posed by the general public.

Plaintiff was 59 years old at the time of his application.  The two other applicants

for the position were Daphne Rich and Susan Gallagher (then known by her maiden name,

"Susan Dussinger"), both of whom were females and younger than plaintiff.  All three applicants

had previous experience investigating both simple and complex cases, and none of the applicants

had prior supervisory experience.  All three applicants were deemed qualified and eligible by the

personnel office to be considered for the position of Supervisory Benefits Advisor.

Although Ms. Capolongo did not select the employees who applied for the

vacancy, she did intervene on plaintiff's behalf to make sure his application was accepted for

consideration notwithstanding that the personnel office had rejected it as being incomplete in not

including plaintiff's most recent performance evaluation as required.  Specifically, Ms.

Capolongo directed the personnel office to include plaintiff on the list of eligible applicants so

plaintiff could be considered.

Ms. Capolongo reached her decision in November 2000 after careful

consideration.  Her decision was based on the selection criteria as stated in the national office's

Vacancy Announcement, as well as the position description prepared by the national office, see

DOL Exhibit 7, and the applications and performance evaluations.

In conducting interviews for the position, Ms. Capolongo asked the applicants the

same or similar questions,[3] and she relied on her own knowledge of the applicants and their

---

[3]Ms. Capolongo interviewed each applicant approximately the same length of time and asked them the same questions, although she had a tendency to get involved in any given interview to such extent that she sometimes failed to take notes.

6

relative abilities to deal with others, including the general public, and their relative abilities to

handle difficult situations and to resolve problems and conflicts.  She used the selection criteria

from the Vacancy Announcement to prepare the interview questions which she asked each

applicant.

Ms. Capolongo ultimately selected Ms. Gallagher (then known as Ms. Dussinger)

to fill the vacancy.  The selection was based on Ms. Gallagher's application and her "superior"

overall rating on her performance evaluation, Ms. Capolongo's interview of Ms. Gallagher, and

on Ms. Capolongo's first-hand knowledge of Ms. Gallagher's writing abilities, work

performance and ability to deal effectively with the general public, to handle difficult situations,

and to resolve and avoid conflicts.

Ms. Gallagher had prepared a training session which Ms. Capolongo attended and

which demonstrated Ms. Gallagher's ability to train other employees.  Plaintiff, on the other

hand, exhibited a more negative attitude.  Plaintiff also had received an "effective" overall rating

performance evaluation, having received only a "meets" on every critical element.  Furthermore,

he was not as capable as Ms. Gallagher at creating well-polished written products, and his office

conduct showed he was not as able as Ms. Gallagher to resolve or avoid conflicts.

Ms. Gallagher, who was born on June 2, 1971, began her employment with the

PWBA directly after graduation from Temple University in 1995, where she graduated with a

dual major in human resources and business administration.  Prior to being hired, she was

interviewed on Temple's campus while she was still a student, by two male PWBA employees,

Jay Igusky and William Hirner, both of whom were over age 40.  That interview was

immediately followed-up by another interview at the PWBA office, again by two males over age

40, Gerard Gumpertz, then-Regional Director, and Stephen Schwab.  Ms. Gallagher was offered

a job the next day, and she accepted, becoming a GS-7 grade level investigator in April 1995.

Ms. Gallagher was promoted at the PWBA on a traditional career ladder (i.e.,

automatic increases in grade absent a demonstrated failure to perform adequately) to a GS-9 level

in 1996, to a GS-11 level in 1997, and to a GS-12 level in 1998.  During her years of

employment at the PWBA, she took the basic training course, as well as courses in criminal law,

finance, accounting and computer training.

Shortly after beginning work at the PWBA as a GS-7 investigator, Ms. Gallagher

was assigned to investigate a case known as the Robyn-Meredith case, which was complex and

involved many financial issues.  She testified at trial that the Robyn-Meredith case should have

been assigned to one of the senior level GS-13 investigators because they handled the most

complex cases at the PWBA.  Another of Ms. Gallagher's cases, known as the Med Temps case,

similarly involved complex issues.  In that the complexities involved legal issues, Med Temps

ultimately was referred to the DOL solicitor's office for litigation.

Plaintiff challenges Ms. Gallagher's handling of both the Robyn-Meredith and

Med Temps cases, arguing that they were "over-age" and should have been resolved more

quickly.  Plaintiff also claims that the cases, particularly Robyn-Meredith, should have prevented

Ms. Gallagher's receipt of the rating "exceeds" on the timeliness element of her 1999-2000

performance evaluation she submitted with her application for the promotion.  However, both

Robyn-Meredith and Med Temps involved complexities beyond Ms. Gallagher's making or

control.  Med Temps ultimately was referred for litigation, and the explanations for the

"timeliness" rating Ms. Gallagher received specifically stated that during the rating period she

8

had recovered nearly one million dollars on behalf of plan participants, with an average time

charged to such cases being under nine days, and that "[n]o case extends beyond the statute of

limitations due to . . . negligence."  Furthermore, the credible evidence does not indicate that Ms.

Gallagher's rating was effected by gender or age.

At the time of her selection to the position at issue here, Ms. Gallagher's track

supervisor was William Hirner, who also supervised another applicant, Daphne Rich.  Mr. Hirner

testified at trial that, as track supervisor, he was the person who assigned cases to Ms. Gallagher.

He also testified that, although Ms. Gallagher had transferred in 1998 to his track from Mr.

Igusky's track, such transfers were not particularly unusual, and Mr. Hirner identified four other

track transfers that came to mind, two occurring as a result of conflicts with a track supervisor.

After Ms. Capolongo selected Ms. Gallagher for the promotion in November

2000, the unsuccessful applicants for the position – plaintiff and Daphne Rich – were

disappointed and upset.  They both complained and criticized Ms. Capolongo.  Soon after the

selection in the fall of 2000, Ms. Rich criticized Ms. Capolongo's decision in two harshly worded

e-mails directed to Ms. Capolongo, see plaintiff's Exhibits 74 and 75, which stated that Ms. Rich

was the most qualified applicant, accused Ms. Capolongo of being unfair for not selecting Ms.

Rich and notified Ms. Capolongo of Ms. Rich's intent to leave the agency due to her non-

selection.

Contrary to that email, Ms. Rich more recently testified at trial that she believed

plaintiff was the most qualified applicant and his non-selection was the result of unlawful

discrimination.  However, Ms. Rich's trial testimony is contradicted by the e-mails she wrote

more than six years before trial and immediately after the decision in which she failed to mention

9

anyone's superior qualifications, except her own, and there was no mention in her e-mails of alleged unlawful discrimination.

Soon after Ms. Capolongo appointed Ms. Gallagher for the position, Ms. Capolongo indicated to Daphne Rich that the appointment was a chance to "promote another person." Ms. Rich testified that there was an awkward pause by Ms. Capolongo between the words "another" and "person." Although Ms. Rich perceived Ms. Caplongo's words as meaning that she intended to say "another woman," that is not what was said. Instead, Ms. Capolongo's words may reasonably be understood to mean that since Ms. Rich was already at a Grade 13 position at the time of the selection of the applicant, and the new position was a Grade 13 position, the new position was a chance to give another person a promotion, instead of giving Ms. Rich an opportunity to make a lateral move. In any event, I do not understand the alleged pause before Ms. Capolongo said the word "person" to mean that the selection was made on the basis of gender or age.

Indeed, Ms. Capolongo told plaintiff after her selection that the decision had been a close one and she wished that she had another Supervisory Benefits Advisor position available. Plaintiff understood that Ms. Capolongo was referring to him and Ms. Gallagher regarding the closeness of the decision.

Plaintiff went to the EEO Office and filed a formal Complaint alleging that his non-selection was the result of unlawful discrimination and that the DOL's stated reasons for selecting Ms. Gallagher were not the actual reasons for that selection. During that process, there were no hearings and no live testimony. Based on affidavits and exhibits, the EEOC issued a December 22, 2004 decision finding no age discrimination but that Ms. Capolongo had a bias

against men which played a factor in the selection process.  Nevertheless, the EEOC found that

the agency would have made the same decision to select Ms. Gallagher even absent a gender

bias.  Having so concluded, the EEOC found that, since the selecting official would have still

made the same decision absent the impermissible motivating factor, plaintiff was not entitled to

any damages, including back pay.  Failing to receive the monetary award he sought, plaintiff

commenced this action on March 15, 2005.

   In the present case, plaintiff is pursuing a "pretext" theory of liability claiming

that females under age 40 received preferential treatment, and that the DOL and PWBA had

discriminatory promotion policies which the selecting official followed in reaching her decision.

Plaintiff alleges that the selecting official was attempting to terminate the employment of males

over age 40 by placing them on performance improvement plans ("PIPs"), and that Ms.

Gallagher was assigned easy cases to inflate her performance evaluations.

   The PWBA had an employee monetary award program wherein awards were

based on an employee's overall annual work performance rating as reflected in the annual

performance evaluations.  Plaintiff never received such awards based on work performance,

except those he received from Ms. Capolongo, and he thought the amounts of his awards should

have been higher.  The total amount of funds available for performance awards in the PWBA's

Philadelphia Regional Office was determined annually by the national office.  The criteria for

receipt of an award and the calculation of the amount was based on the employee's "overall

rating," and the dollar amount was the same for every employee at the same grade level who

received the same rating.

Over the years, the PWBA's Administrative Officer, Brian McDonnell, who testified at trial, has received diversity information which he distributed to regional and national office directors concerning the demographics of the PWBA's staff as a whole, including information about gender and race.  Some of this information was distributed at regional director meetings or senior staff meetings held during the year.  Some of this information was never distributed to the PWBA.  The objective of the diversity reports was to increase the applicant pools for under-represented groups.  Ms. Capolongo did not consider diversity in reaching her selection decision.

PIPs were designed to help employees improve their work performance once it became clear to an employee's supervisor in performing the annual evaluations that the employee was in danger of failing one or more critical elements.  At trial, plaintiff presented three men over age 40 to testify as to their being placed on PIPs: Jay Igusky, Stephen Schwab and Sigmund Kozierachi.

Jay Igusky's supervisor was Jean Machiz, a female over age 40, at the time of his PIP.  Mr. Igusky did not agree that his work performance required improvement, but he did not believe his PIP was any effort on the part of Ms. Capolongo to terminate the employment of men over age 40.  Jean Machiz, a female over age 40, was also Stephen Schwab's supervisor at the time of his PIP.  Mr. Schwab likewise did not agree that his work performance required improvement, but he did not believe his PIP was any effort on the part of Ms. Capolongo to terminate the employment of men over age 40.

Jean Machiz was born on December 2, 1951, and as the PWBA Deputy Regional Director, she was the immediate supervisor of Messrs. Igusky and Schwab, and thus, she

12

evaluated their work performances.  Ms. Machiz testified at trial that the decisions to place those employees on PIPs were hers after she had tried unsuccessfully to counsel them.  She indicated that she based their PIPs on poor work performance and that the PIPs were not directed by Ms. Capolongo.  The decisions of Ms. Machiz were not based on age or gender.

Sigmund Kozierachi testified that he was placed on a PIP in 2005 and that the PIP and other alleged "adverse employment actions" against him allegedly were done in "retaliation" for his assisting plaintiff in this litigation.  Mr. Kozierachi – a GS-12 investigator and union representative – testified that his former supervisor responsible for the PIP, Norman Jackson (now Deputy Regional Director), was hostile toward him.  Mr. Kozierachi also testified that his PIP, although issued in 2005, had been delayed and at the time of trial in this action had not been finally resolved.

Mr. Jackson was born on May 9, 1960 and is thus over age 40.  He was Mr. Kozierachi's supervisor during the evaluation year 2004 through 2005, and as such, he evaluated Mr. Kozierachi's work performance.  Mr Jackson testified at trial that the decision to place Mr. Kozierachi on a PIP was his and was based on Mr. Kozierachi's poor work performance and not directed by Ms. Capolongo.  Mr. Jackson also explained that the alleged delays Mr. Kozierachi complained of were the result of his own decisions repeatedly to resort to the grievance process.  Mr. Jackson testified that his decision to place Mr. Kozierachi on a PIP was not based on Mr. Kozierachi's age or gender, and the decision was made when Mr. Jackson himself was over age 40.

When he was a GS-13 senior investigator, Mr. Jackson filed a grievance challenging the "productivity" performance standard.  As a GS-13 senior case investigator, Mr.

Jackson handled numerous complex cases.  Mr. Jackson, who like plaintiff was a male over age 40 during the relevant period, was promoted twice by Ms. Capolongo.  He was first promoted in April 2004 from his GS-13 senior investigator position to that of a GS-14 track supervisor, and he was promoted again in November 2005 to that of a GS-15 in his current position of Deputy Regional Director.

Plaintiff elicited testimony from various witnesses regarding Trigon cases in attempting to show that Ms. Gallagher was assigned an unusually large number of allegedly "simple" cases to inflate her performance evaluations.  The evidence indicated that the Trigon cases (i.e., cases involving the demutualization of an insurance company of Virginia to a stock company, forming a new company called Trigon) were not necessarily easy.  Furthermore, virtually every investigator throughout the Philadelphia Regional Office received Trigon cases, and Ms. Gallagher actually received only a few more Trigon cases than plaintiff.  During the five-year period from 1995 through 2000, plaintiff closed 14 Trigon cases while Ms. Gallagher closed 17 Trigon cases.  Ms. Gallagher closed 13 of her 17 cases with monetary results, thus sending money back to the health plans, and plaintiff did not close any of his Trigon cases with monetary results.  See DOL Exhibits 24 and 25.

Mr. Kozierachi testified at trial that Ms. Capolongo allegedly gave preferential treatment to females under age 40.  He testified concerning various of her alleged misdeeds, including (a) Ms. Capolongo's alleged delay in the issuance of the Vacancy Announcement for the promotion at issue until one or more females were eligible to apply; (b) Ms. Capolongo's alleged plotting during a meeting in Maryland concerning a prolonged distribution of the Trigon cases; and (c) Ms. Capolongo's alleged demand to Mr. Igusky to change plaintiff's rating on the

"timeliness" element of plaintiff's 1999-2000 performance evaluation.  It is noted that Mr.

Kozierachi's trial testimony was substantially different from that in the affidavit he submitted on

plaintiff's behalf during the EEOC proceedings, see DOL Exhibit 27, a time much closer to the

alleged events about which he testified.  In light Mr. Kozierachi's own personal issues with Ms.

Capolongo and the PWBA, and having the opportunity to witness his demeanor and hear his

testimony first-hand, Mr. Kozierachi's testimony is found in large part not credible.


## 2.    Conclusions of Law

As explained above, plaintiff contends that in selecting Ms. Gallagher instead of

himself to the Supervisory Benefits Advisor position, his federal employer engaged in gender and

age discrimination under Title VII and the ADEA, respectively.  The ADEA and Title VII "serve

the same purpose – to prohibit discrimination in employment against members of certain

classes."  Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007) (quoting Newman v. GHS

Osteopathic, Inc., 60 F.3d 153, 157 (3d Cir. 1995)).  Accordingly, as the parties acknowledge,

claims under Title VII and the ADEA are analyzed under the same burden-shifting framework

established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Silver v. American

Inst. of CPAs, 212 Fed. Appx. 82, 84 (3d Cir. Dec. 6, 2006) (citing McKenna v. Pacific Rail

Serv., 32 F.3d 820, 826 n.3 (3d Cir. 1994)); see Wishkin, 476 F.3d at 185; see, e.g., Oleksiak v.

Barnhart, 2007 WL 1299329, at *3 (3d Cir. May 4, 2007); Money v. Provident Mutual Life Ins.

Co., 189 Fed. Appx. 114, 115 (3d Cir. July 7, 2006); Parks v. Rumsfeld, 119 Fed. Appx. 382,

383 (3d Cir. Jan. 5, 2005).

Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003), cert. denied, 541 U.S. 1064 (2004); Smith v. Thomas Jefferson Univ., 2006 WL 1887984, at *3 (E.D. Pa. June 29, 2006).  "[T]here is a low bar for establishing a prima facie case of employment discrimination." Scheidemantle v. Slippery Rock Univ., 470 F.3d 535, 539 (3d Cir. 2006).

If the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Sarullo, 352 F.3d at 797 (quoting McDonnell Douglas, 411 U.S. at 802); Smith, 2006 WL 1887984, at *3.  If the defendant meets its burden, "the burden of production rebounds to the [plaintiff]," see Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994), who must show that the employer's explanations "were not its true reasons, but were a pretext for discrimination." Barber v. University of Med. and Dentistry of N.J., 118 Fed. Appx. 588, 590 (3d Cir. Dec. 15, 2004) (quoting Jones v. School Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999)); see Jones, 198 F.3d at 410 (quoting Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)) ("While the burden of production may shift, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"); Fuentes, 32 F.3d at 763; Smith, 2006 WL 1887984, at *3.  "At trial, the plaintiff must convince the trier of fact **both** that the reason was false, and that discrimination was the real reason." Jones, 198 F.3d at 412-13 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original)).

To establish a prima facie case of gender and age discrimination, a plaintiff must demonstrate the following: (1) that he is a member of a protected class; (2) that he applied for and was qualified for a job the employer was trying to fill; (3) though qualified, he was rejected; and (4) "circumstances give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class." Morrisey v. Luzerne County Cmty. College, 117 Fed. Appx. 809, 812 (3d Cir. Oct. 19, 2004) (citing Jones, 198 F.3d at 410-11); see Smith, 2006 WL 1887984, at *3 (citing Jones, 198 F.3d at 410-11). In the present case, plaintiff has established a prima facie case of gender and age discrimination. Evidence submitted at trial indicates that plaintiff, a 59-year old male, applied for and was qualified for the Supervisory Benefits Advisor position, and  he suffered an adverse employment action when he was denied a promotion to the Supervisory Benefits Advisor position. See, e.g., Smith, 2006 WL 1887984, at *4.

Since a prima facie case of gender and age discrimination has been established, the burden of production shifts to defendant to articulate legitimate nondiscriminatory reasons for not selecting plaintiff for the desired promotion. See id. Defendant's burden at this second step of the McDonnell Douglas framework is "relatively light," and defendant need only "introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes, 32 F.3d at 763; Smith, 2006 WL 1887984, at *4.

Here, plaintiff does not dispute that in rebutting plaintiff's prima facie case of discrimination, defendant has met the burden of providing legitimate, nondiscriminatory reasons for the decision to select Ms. Gallagher rather than plaintiff. See, e.g., Pl.'s Proposed Finding of

Fact No. 6 ("Defendant has carried its burden of producing a legitimate non-discriminatory reason for denying the promotion to Plaintiff.").  Defendant states that Ms. Capolongo's decision was not based on gender or age, but rather was based on selection criteria established by the PWBA national office, as well as a position description also created by the PWBA national office.  Among other things, the national office required that the position be filled with someone able to deal effectively with the general public and to provide guidance with a demonstrated skill in communicating and preparing written reports.

Since, as plaintiff concedes, defendant satisfied her burden, "the burden of production rebounds to the [defendant]," who must show that the employer's explanation is pretextual.  See Fuentes, 32 F.3d at 763; Smith, 2006 WL 1887984, at *3.  The Third Circuit has "characterized this final aspect of the McDonnell Douglas analysis as comprised of two alternatives" as articulated by Fuentes and Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996) (en banc).  See Jones, 198 F.3d at 413 (citing Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc)).  Plaintiff is required to "demonstrate such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its actions" that the employer's proffered reasons are "unworthy of credence," see Jones, 198 F.3d at 413 (citing Keller, 130 F.3d at 1108); **or** (2) "that discrimination was more likely than not a motivating or determinative cause of the adverse employment action," see Jones, 198 F.3d at 413 (citing Fuentes, 32 F.3d at 764).  See also Valdes v. Union City Bd. of Educ., 186 Fed. Appx. 319, 322-23 (3d Cir. July 24, 2006) (quoting Fuentes, 32 F.3d at 765); Igwe v. E.I. DuPont de Nemours and Co., 180 Fed. Appx. 353, 355 (3d Cir. May 11, 2006) (quoting Fuentes); Parks, 119 Fed. Appx. at 383-84 (quoting Fuentes).

18

Under the first prong, "[i]n simpler terms, [the plaintiff] must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Parks, 119 Fed. Appx. at 384 (citing Keller, 130 F.3d at 1109). This is a stringent standard for plaintiffs because "'federal courts are not arbitral boards ruling on the strength of [the employment decision]. The question is not whether the employer made the **best**, or even a sound, business decision; it is whether the real reason is [discrimination].'" Parks, 119 Fed. Appx. at 384 (quoting Keller, 130 F.3d at 1109) (emphasis added).

Under the alternative second prong of the Fuentes test, plaintiff must point to evidence "that proves age [or gender] discrimination in the same way that critical facts are generally proved – based solely on the natural probative force of the evidence." Parks, 119 Fed. Appx. at 384 (quoting Keller, 130 F.3d at 1111). Here, the parties agree, see, e.g., Pl.'s Br. at 33, ¶ 9; Def.'s Br. at 36, ¶ 21, to satisfy the "determinative factor" requirement, plaintiff must show that, but for plaintiff's gender or age, his promotion to the Supervisory Benefits Advisor position would have occurred. See Watson, 207 F.3d at 213-14.

Plaintiff fails to sustain his burden to establish that the DOL's articulated reasons for the promotion decision were a "pretext" for unlawful discrimination. See Barber, 118 Fed. Appx. at 590 (quoting Jones, 198 F.3d at 410); Fuentes, 32 F.3d at 763; Smith, 2006 WL 1887984, at *3. He fails to show that "defendant's proffered reason 'was so plainly wrong that it cannot have been the employer's real reason.'" Parks, 119 Fed. Appx. at 384 (quoting Keller, 130 F.3d at 1109). Thus, he fails to satisfy the first prong of Fuentes. See Parks, 119 Fed. Appx. at 384.

It is noted that the issue here is not whether the selecting official was correct or mistaken in her assessment of plaintiff.  The issue is whether defendant acted with discriminatory intent.  Accordingly, the fact-finder is not entitled to substitute his own judgment concerning whether the decision was wise, or fair or mistaken.  A decision is not unlawful merely because an individual may disagree with the reasons stated by the selecting official or because a person may believe the decision was wrong or even unreasonable or mistaken.  See Fuentes, 32 F.3d at 765.

Furthermore, plaintiff did not show "that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."  See Jones, 198 F.3d at 413 (citing Fuentes, 32 F.3d at 764).  The credible evidence does not indicate that but for plaintiff's gender or age, plaintiff would not have been selected for the Supervisory Benefits Advisor position.  See Watson, 207 F.3d at 213-14.

"[T]he fact that an employer maintains statistical awareness regarding diversity issues in the workplace is not evidence of discrimination."  Reed v. Agilent Tech., 174 F. Supp. 2d 176, 185 (D. Del. 2001).  Here, diversity awareness at the DOL or PWBA was not relied on by Ms. Capolongo in making or implementing any employment decision concerning plaintiff.  "Unless he can demonstrate that [the DOL's or PWBA's] approach to diversity had some negative impact on **his** individual employment situation, the mere existence of a policy promoting diversity awareness is not evidence of discrimination."  Reed, 174 F. Supp. 2d at 185.

Plaintiff also attempted to establish "pretext" by focusing on the PIPs of three males over age 40, trying to show that Ms. Capolongo was trying to terminate their employment because of their gender and age.  The credible evidence does not indicate that anyone was placed on a PIP as a result of gender or age discrimination.  Indeed, two of the three employees testified

20

specifically that they did not get the impression that Mabel Capolongo discriminated against males over age 40.  Only one employee placed on a PIP, Sigmund Kozierachi, testified regarding an alleged belief that his PIP was the result of unlawful considerations but, even then, he claimed he believed that his PIP was the result of "retaliation" for assisting plaintiff with the instant lawsuit.

Based on the credible evidence, defendant did not discriminate against plaintiff on the basis of his age or gender when he was not selected for a promotion to the position of Supervisory Benefits Advisor, GS-13.  The promotion decision was not discriminatory against plaintiff in violation of Title VII and the ADEA.  Ms. Capolongo's decision to promote Ms. Gallagher was based on Ms. Capolongo's belief that Ms. Gallagher was more qualified than plaintiff with regard to the selection criteria as stated in the national office's Vacancy Announcement, as well as the position description prepared by the national office.  The selection was based on the applications and performance evaluations, Ms. Capolongo's interviews, and on Ms. Capolongo's first-hand knowledge of Ms. Gallagher's writing abilities, work performance and ability to deal effectively with the general public, to handle difficult situations and to resolve and avoid conflicts.  Accordingly, defendant is entitled to judgment in her favor.

Defendant also appears to request attorneys fees and costs.  See Def.'s Br. at 43 ¶ 44.  This is not a case where plaintiff's action was "frivolous, unreasonable, or without foundation."  See EEOC v. L.B. Foster Co., 123 F.3d 746, 751 (3d Cir. Aug. 25, 1997) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 416-17 (1978)) (noting that in Title VII actions alleging failure to promote due to gender discrimination, prevailing defendants may only be awarded attorney's fees in a court's discretion "upon a finding that the plaintiff's action was

frivolous, unreasonable or without foundation, even though not brought in subjective bad faith"),

cert. denied, 522 U.S. 1147 (1998).  Moreover, 42 U.S.C. § 2000e-5(k) provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, **other than** the Commission or **the United States**, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

L.B. Foster Co., 123 F.3d at 750 (quoting § 2000e-5(k)) (emphasis added).  Here, defendant's request for fees and costs is denied.

An implementing Order follows:

22

_____ IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY GUSTAITIS                    :          CIVIL ACTION
                                     :
        v.                           :
                                     :
ELAINE CHAO, Secretary of Labor      :          NO.  05-1210

# O R D E R

AND NOW, this 16th day of July, 2007, upon consideration of the evidence

presented at the bench trial held before this Court, for the reasons provided in the accompanying

Memorandum, it is hereby **ORDERED** that **JUDGMENT** shall be entered in favor of defendant,

Elaine L. Chao, Secretary of Labor, and against plaintiff, Anthony Gustaitis.

BY THE COURT:

 /s/ L. Felipe Restrepo
L. FELIPE RESTREPO
UNITED STATES MAGISTRATE JUDGE